IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOON RAWD TRADING INTERNATIONAL CO., LTD.,<br><br>    Plaintiff,<br><br>  v.<br><br>PALEEWONG TRADING CO., INC.,<br><br>    Defendant.<br>_____/<br>AND RELATED COUNTERCLAIMS.<br>_____/ | No. C 09-05617 WHA<br><br>**ORDER ON MOTION FOR LEAVE TO AMEND AND VACATING HEARING** |

**INTRODUCTION**

In this contractual dispute involving the exclusive importation rights for Singha Beer, the crisp and refreshing "original premium Thai beer," defendant and counterclaimant Paleewong Trading Co., Inc. ("PTC") moves for leave to amend three counterclaims dismissed by a prior order. Plaintiff and counterdefendant Boon Rawd Trading International Co., Ltd. ("BRTI") opposes the motion. For the reasons set forth below, PTC's motion is **GRANTED IN PART AND DENIED IN PART**.

**STATEMENT**

The rich history behind Singha Beer and the events leading up to this dispute were set forth in the prior order resolving BRTI's motion to dismiss. *See Boon Rawd Trading Intern. Co.,*

*Ltd. v. Paleewong Trading Co., Inc.*, --- F. Supp. 2d ----, 2010 WL 668063 (N.D. Cal. 2010). Only the facts essential to the resolution of this order are repeated below.

Plaintiff and counterdefendant BRTI, a Thai corporation, exports Singha Beer to various countries around the world, including the United States (Compl. ¶ 7). Defendant and counterclaimant PTC, a New York corporation, began importing and distributing Singha Beer in the U.S. in the 1970s, eventually becoming the *only* importer and distributor of Singha Beer in the United States (*id.* at ¶¶ 9, 10, 11). The heart of the instant dispute is whether "only" in this context meant "exclusive" (*id.* at ¶¶ 20–23). Adding a further wrinkle to this litigation is the fact that *there was never any written contract* evidencing the alleged "exclusive" agreement between the parties. Rather, PTC alleged that a "course of conduct" formed the basis of the agreement.

Speaking broadly, PTC alleged that it had been the *exclusive* importer and distributor of products manufactured by Boon Rawd Brewery (including Singha Beer) within a defined territory of 32 states over the past three decades (Ans. ¶ 27). According to PTC, in around 2002, BRTI began engaging in a "tactical scheme" to strip PTC of its exclusive importation rights by unilaterally encroaching into PTC's defined territory, appointing a subsidiary as a "dual importer" to compete with PTC, practicing price discrimination against PTC, misappropriating PTC's confidential proprietary information, setting artificial sales goals, and accusing PTC of various improprieties in its business operations (*id.* ¶ 28). This "tactical campaign" was allegedly intended to diminish the value of PTC's importation rights, diminish PTC's profits, and create a pretextual basis to terminate the alleged exclusive importation agreement for cause (*id.* ¶ 41).

As part of this campaign, PTC claimed that in 2003, BRTI formed Singha North America ("SNA") to (1) compete with PTC as an importer and distributor of Boon Rawd products in the United States and (2) eventually *replace* PTC in the exclusive territories it served (*id.* ¶ 42). Between 2003 and 2006, BRTI allegedly attempted on multiple occasions to terminate PTC's exclusive importation rights in California without good cause or for insufficient compensation (*id.* ¶¶ 45–48). In or around 2006, BRTI then supposedly proposed that SNA and PTC form a "joint venture" that would *share* importation rights to Boon Rawd products, while leaving PTC with its exclusive distribution rights in its alleged exclusive territories intact (*id.* ¶ 49). During

the negotiation process, however, BRTI allegedly began exporting its products to SNA for distribution *within* defendant's exclusive territories, and SNA supposedly began competing *directly* with PTC in California (*id.* ¶¶ 51, 54). Finally, the original answer alleged that SNA — who is *not* a party to this action — hired a key PTC employee in 2006 to enable itself to compete in California, and that BRTI misappropriated PTC's confidential and proprietary information and provided it to SNA at or around this time (*id.* ¶¶ 55, 56).

Between the end of 2006 through mid-2009, the parties negotiated off-and-on over PTC's alleged "exclusive" importation rights (*id*. ¶¶ 50, 58–65). Finally, BRTI sent PTC a notice on August 20, 2009, advising PTC that its importation rights to Boon Rawd products would be terminated effective December 31, 2009 (*id.* ¶ 66). According to PTC, this purported termination was without good cause, thereby entitling it to reasonable compensation (*id.* ¶ 67). This civil action was then filed by BRTI on November 30, 2009. The complaint sought declaratory relief that BRTI did *not* owe PTC any reasonable compensation, and that there was no "exclusive" importation agreement between the parties (*id.* ¶¶ 71, 72; Dkt. No. 1). PTC responded on December 21, 2009, by asserting eight counterclaims in its answer (Dkt. No. 6).

\*             \*             \*

On January 14, 2010, BRTI moved to dismiss seven of PTC's eight counterclaims (Dkt. No. 16). The motion was granted in part and denied in part on February 19, 2010. *Boon Rawd*, 2010 WL 668063 at \*14. PTC now moves for leave to amend three counterclaims dismissed (without prejudice) by the February 19 order: (1) conversion, (2) unjust enrichment, and (3) violation of the California Franchise Relations Act (CFRA), Cal. Bus. & Prof. Code § 20000 *et seq.* These counterclaims are addressed in turn below.

**ANALYSIS**

In the February 19 order, PTC was expressly invited to file the instant motion. This order must therefore determine whether PTC's proposed amended pleading contains sufficient factual matter, accepted as true, to state plausible counterclaims for conversion, unjust enrichment, and violations of the CFRA. *See Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937, 1949 (2009). A counterclaim is facially plausible when there is sufficient factual content to draw a reasonable

3

inference that the accused party is liable for the misconduct alleged. While the Court "must take all of the factual allegations in the [pleading] as true," it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 1949–50. "[C]onclusory allegations of law and unwarranted inferences are insufficient . . . to state a [counter]claim." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996).

### 1. PTC'S AMENDED COUNTERCLAIM FOR CONVERSION

Under California law, a claimant must plead three elements to state a claim for conversion: (1) ownership or right to possession of personal property; (2) a defendant's wrongful interference with the claimant's possession; and (3) damage to the claimant. *PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP*, 150 Cal. App. 4th 384, 394 (2007). Additionally, a claimant in a conversion action must prove that it did not consent to the defendant's exercise of dominion over its property. *Bank of New York v. Fremont General Corp.*, 523 F.3d 902, 914 (9th Cir. 2008).

While early California cases expressly held that an intangible interest such as customer goodwill cannot be the subject of a claim for conversion, later cases merely held that an intangible interest must be "merged with, or reflected in, something tangible." *Compare Adkins v. Model Laundry Co.*, 92 Cal. App. 575, 583 (1928) and *Olschewski v. Hudson*, 87 Cal. App. 282, 288 (1927) *with Thrifty-Tel, Inc. v. Bezenek*, 46 Cal. App. 4th 1559, 1565 (1996). Notably, the Ninth Circuit recently held that to the extent "California retains some vestigial merger requirement, it is clearly minimal, and at most requires only some connection to a document or tangible object." *Kremen v. Cohen*, 337 F.3d 1024, 1033 (9th Cir. 2003) (internal quotations and citations omitted).

Despite the clear trend that intangible property *can* be the subject of a conversion claim in California, the February 19 order nevertheless determined — while acknowledging that the issue was a close one — that goodwill alone *cannot* be the subject of such a claim. *See Boon Rawd*, 2010 WL 668063 at *12. This holding was based upon the fact that no published cases have overruled the express holdings by the California Supreme Court in *Olschewski* and *Adkins* barring conversion claims for business goodwill. Similarly, the prior order rejected PTC's conversion

4

counterclaim based upon its alleged contractual importation rights, because these rights were properly protected under contract law. *Ibid.*

In its proposed amended pleading (submitted alongside the instant motion), PTC clarified its conversion counterclaim as being based upon "tangible" property rights in "confidential and proprietary information," including "detailed sales information, account level, name, volume, pricing and delivery information" (Proposed Ans. ¶¶ 70, 73; Br. 5–6). Specifically, PTC augmented its prior pleading by alleging that this "confidential and proprietary information" was "misappropriat[ed]" by BRTI, since it was supposedly provided to SNA (PTC's competitor) without compensation to PTC (Proposed Ans. ¶ 73). The threshold question, therefore, is whether these specific property rights may be the subject of a conversion claim under California law.

Under controlling precedent, the answer is yes. In *Kremen*, the Ninth Circuit clearly stated that California conversion law recognized the "conversion of music recordings, radio shows, *customer lists*, regulatory filings, *confidential information* and even domain names[,]" so long as the information was (or could be) tangibly stored on paper or in electronic form. *Kremen*, 337 F.3d at 1033 (emphasis added).

As such, PTC's counterclaim for conversion is proper under California law to the extent that it is based upon "tangible sales information, account level, name, volume, pricing and delivery information," or other "confidential or propriety business information" (such as customer lists) capable of storage either electronically or on paper documents. *See ibid.* PTC may *not*, however, stray beyond these specific property rights and attempt to broaden their conversion counterclaim as one for "business goodwill" or contractual "import rights." As stated in the prior order, "business goodwill" and "import rights" — at least as pled here — cannot be the subject of a conversion claim under California law.

None of the arguments raised by BRTI compels a different conclusion. *First*, BRTI argues that PTC must expressly allege lack of consent to properly state a claim for conversion (Opp. 5). While it is true — under *Bank of New York —* that lack of consent must be proven by PTC to prevail on its conversion counterclaim, this order finds that "lack of consent" inheres in PTC's allegation that BTRI "misappropriat[ed]" and "illegally t[ook] away" confidential

5

information by providing it to a competitor without compensation to PTC (Proposed Ans. ¶ 73). As such, this argument fails. *Second*, BRTI asserts that under the applicable three-year statute of limitations, PTC's conversion counterclaim is time-barred on its face. This order disagrees. While PTC's pleading alleged that the "misappropriation" of confidential and proprietary information by BRTI occurred in or around 2006, and PTC asserted its counterclaims on December 21, 2009, there is at least a window of *one week* within 2006 that timely acts of misappropriation may have occurred. Since a claim (or counterclaim) may not be dismissed (at least at this stage of the litigation) unless it is *certain* on the face of the pleading that the claim is time-barred, PTC's conversion counterclaim survives this attack. *See Vaughan v. Grijalva*, 927 F.2d 476, 480 (9th Cir. 1991).

For these reasons, PTC's motion with respect to its conversion counterclaim is **GRANTED**. While leave to amend will be allowed, this counterclaim will be strictly limited to the alleged conversion of "tangible sales information, account level, name, volume, pricing and delivery information," or other "confidential or propriety business information" (such as customer lists) capable of storage either electronically or on paper. As explained above, PTC may not broaden this counterclaim to encompass the conversion of "business goodwill" or "import rights."

**2.    PTC'S AMENDED COUNTERCLAIM FOR UNJUST ENRICHMENT**

As the prior order explained, unjust enrichment is not a standalone claim under California law, but "a general principle, underlying various legal doctrines and remedies" that is "synonymous with restitution." *McBride v. Boughton*, 123 Cal. App. 4th 379, 387 (2004). The basic elements of unjust enrichment are the "receipt of a benefit and [the] unjust retention of the benefit at the expense of another." *See Lectrodryer v. SeoulBank*, 77 Cal.App.4th 723, 726 (2000). That said, since PTC's unjust enrichment claim is properly pled as a claim for a contract implied-in-law, PTC must also allege that (1) the parties' rights were not squarely set out in a binding agreement, or (2) any express contract between the parties was procured by fraud or was unenforceable or ineffective for some reason. *McBride*, 123 Cal. App. 4th at 387–88.

In the February 19 order, PTC's counterclaim for "unjust enrichment" was dismissed for failing to allege either of these two theories for a contract implied-in-law. *Boon Rawd*, 2010 WL

6

668063 at *12–13. Separately, the prior order found that a two-year limitations period applied to the claim, since PTC failed to allege any act of fraud or mistake to trigger a three-year statute of limitations (which PTC argued should apply to its unjust enrichment counterclaim) for "[a]n action for relief on the ground of fraud or mistake." *Ibid.*; Cal. Code Civ. Proc. § 338(d).

To remedy these deficiencies, PTC — in its proposed amended counterclaim for unjust enrichment — removed any incorporation of prior factual allegations evidencing the existence of a binding contractual agreement between the parties. Instead, the amended counterclaim alleged that "BRTI disputes the existence of an enforceable exclusive importation agreement . . . as well as [PTC's] right to reasonable compensation" (Proposed Ans. ¶ 75). The intent of this omission, according to PTC, was to make clear that its unjust enrichment counterclaim was *not* premised upon the existence or allegation of a valid and enforceable agreement between the parties (Reply 7). Rather, PTC's amended unjust enrichment counterclaim is intended to provide the basis for relief if "the Court finds that there is no enforceable binding agreement that governs the parties' relationship" (*ibid.*). In other words, this is a fall-back counterclaim in case PTC is unable to prove that an "exclusive" importation agreement existed between the parties.

Since "[a] party may state as many separate claims or defenses as it has, regardless of consistency," PTC may properly assert counterclaims based upon both the existence and absence of a binding agreement between the parties. *See* FRCP 8(d)(3). As such, even if PTC attempts but ultimately fails to prove the existence of a binding agreement between the parties, this failure would not foreclose the possibility that its unjust enrichment claim could provide relief. Accordingly, this order finds that PTC's proposed amended counterclaim for unjust enrichment has sufficiently alleged that the parties' rights were *not* squarely set out in a binding agreement. Additionally, PTC sufficiently alleged the "receipt of a benefit and [the] unjust retention of the benefit at the expense of another," which are also required to properly state a claim (*see id.* at ¶ 77). For these reasons, PTC's proposed unjust enrichment "claim" has been adequately pled.

Whether a three-year limitations period should apply, however, is a different story. To trigger the applicability of a three-year statute of limitations under Section 338(d) (rather than the catch-all two-year limitations period under Section 339(1)), PTC's unjust enrichment

7

1  counterclaim must be grounded — at least in part — in allegations of fraud.  This order finds that
2  PTC has *not* sufficiently pled allegations of fraud under the heightened requirements of FRCP
3  9(b).  Indeed, in its proposed amended counterclaim, PTC merely stated that "BRTI has also
4  obtained a benefit by fraud" by making "various misrepresentations including that [PTC] would
5  continue as importer in various territories in order that [PTC] would continue to invest its own
6  resources [to] maximize sales, market share, and strengthen the Singha brand, all the while
7  grooming its own subsidiary to eventually push [PTC] out completely" (Proposed Ans. ¶ 78).

8  To meet the heightened pleading requirements of Rule 9(b), the pleading must set forth
9  the "time, place, and specific content of the false representations as well as the identities of the
10 parties to the misrepresentations."  *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007)
11 (citation omitted).  PTC's proposed pleading falls well short of this standard.  Indeed, PTC failed
12 to allege when any of these alleged misrepresentations were made, where they were made, and
13 who at BRTI made them (*see id.* at ¶¶ 75–80).  Given this lack of particularity, PTC's attempt to
14 invoke the three-year statute of limitations under Section 338(d) must be rejected.

15 Also rejected is PTC's attempt to apply the three-year limitations period for conversion
16 claims to its unjust enrichment counterclaim (*see id.* at ¶ 78).  PTC has already sufficiently pled a
17 separate conversion counterclaim.  As explained above, any damages incurred by PTC due to
18 conversion of its property may be properly recovered via that counterclaim.  In sum, this order
19 finds that the two-year statute of limitations under Section 339(1) will apply to PTC's unjust
20 enrichment (contract implied-in-law) counterclaim.

21 Finally, BRTI's argument that PTC's counterclaim is time-barred on its face has already
22 been rejected by the February 19 order.  As stated in the prior order, PTC sufficiently alleged that
23 BRTI committed numerous allegedly wrongful acts within the two-year limitations period (*id.* at ¶
24 76).  *Boon Rawd*, 2010 WL 668063 at *13.  As such, PTC may bring this counterclaim for any
25 acts occurring within the two-year period (subject to proof that no binding agreement existed
26 between the parties, and BRTI received "a benefit" and unjustly retained that benefit at the
27 expense of PTC).

8

For these reasons, PTC's motion with respect to its unjust enrichment counterclaim is **GRANTED IN PART AND DENIED IN PART**. This counterclaim may proceed under the factual allegations set forth in paragraphs 76 and 77 of the amended pleading, and under the theory that no binding agreement existed between the parties. This counterclaim may *not* proceed, however, upon the allegations of fraud or conversion as set forth in paragraph 78 of the proposed pleading. Since these allegations have not been pled with requisite specificity, paragraph 78 must be **STRIKEN** from PTC's proposed amended pleading prior to filing.

### 7. PTC'S AMENDED COUNTERCLAIM FOR VIOLATION OF THE CALIFORNIA FRANCHISE RELATIONS ACT

To state a claim for a violation of the California Franchise Relations Act, Cal. Bus. & Prof. Code § 20000 *et seq.*, PTC must allege that there was a "contract or agreement, express or implied, in which the purported franchisee meets [the] three criteria" set forth below, and that the franchisor (here, BRTI) committed some act prohibited by CFRA. *See Gabana Gulf Distrib., Ltd. v. GAP Int'l Sales, Inc.*, 2006 WL 2355092 at *7 (N.D. Cal. 2006) (Breyer, J.). The three criteria for a franchisee under the CFRA are: (1) the franchisee is granted the right to engage in the business of offering, selling or distributing goods or services under a marketing plan or system prescribed in substantial part by a franchisor, (2) the operation of the franchisee's business pursuant to that plan or system is substantially associated with the franchisor's trademark, service mark, trade name, logotype, advertising, or other commercial symbol designating the franchisor or its affiliate, and (3) the franchisee is required to pay, directly or indirectly, a franchise fee. Cal. Bus. & Prof. Code § 20001; *see also id.* § 20007 (defining "franchise fee"); *id.* § 20009 (setting forth guidance on determining a "franchise" under the Act).

The February 19 order dismissed the CFRA counterclaim due to PTC's complete failure to provide *any* factual allegations to support an inference that it was a "franchisee" under the three criteria set forth above. As an example, PTC failed to allege that it had paid any franchise fee to BRTI, or that it was operating pursuant to a marketing plan or system prescribed in substantial part by BRTI. The prior order also noted that such allegations — even if made — might appear inconsistent with other factual allegations made in the original answer, but declined to hold that leave to amend the counterclaim would be "futile."

9

In its proposed amended CFRA counterclaim, PTC has attempted to address these various deficiencies. It is now alleged that PTC "was granted the right to import and distribute Singha Beer under a marketing plan or system prescribed in substantial part by BRTI[,] [t]he operation of [PTC's] business . . . has always been substantially associated with . . . BRTI's trade name Singha, and [PTC] has been required to pay indirectly a franchise fee to BRTI" (Proposed Ans. ¶ 82). The proposed counterclaim then set forth various details of the alleged "marketing plan," asserting that BRTI "prescribed or limited resale prices, assigned exclusive territory for importing, . . . limited sale of competitive products . . . , and always maintained strict control over uniform and distinct appearance of its product" (*id.* at ¶ 83). Additionally, the proposed amended pleading set forth details of the alleged "indirect franchise fee," asserting that "BTRI did not allow an over the line budget [and] reimbursed only a percentage of advertising and promotional expenditures . . . in addition to other means by which fees were paid indirectly" (*id.* at ¶ 84).

Given these amendments, this order finds that PTC's amended counterclaim alleging violations of the CFRA meets the minimum pleading requirements to properly state a claim. This conclusion is largely supported by Release 3-F of the California Commissioner of Corporations, which provides guidance as to the scope of a "franchise," "marketing plan," and "franchise fee" under the CFRA (Wang Decl. Exh. A). *See* Cal. Bus. & Prof. Code § 20009 ("[T]he regulations, releases, guidelines and interpretive opinions of the Commissioner of Corporations under the Franchise Investment Law . . . regarding whether or not an agreement constitutes a "franchise" within the meaning of that law shall be prima facie evidence of the scope and extent of coverage of the definition of 'franchise' *under this chapter*") (emphasis added). As the Commissioner's release explains, the various factual allegations mentioned above — if proven true — may support the applicability of the CFRA to this dispute.

While it is true, as BRTI points out it its opposition, that PTC allegedly "created a market for Boon Rawd Products, most significantly Singha Beer, in the United States," and that Boon Rawd Brewery allegedly "did not support [PTC's] efforts to build the Singha brand in the United States" when PTC first began serving as an importer of its products in the 1970s, this order finds that these factual allegations do not preclude the possibility of a "franchise" relationship (in the

10

meaning contemplated by the CFRA) developing between the parties between 2000 and 2009. Stated differently, the mere fact that PTC allegedly developed a market for Singha in the United States between 1976 and 2000 is not inconsistent with the allegation that BRTI later imposed a "marketing plan" and collected "franchise fees" within the scope of the CFRA.

In sum, treating the facts alleged as true (as this order must), PTC's motion with respect to its CFRA counterclaim is **GRANTED**. If, as BRTI argues, PTC is trying to fit a square peg into a round hole, the evidence (or lack thereof) will surely bring this to light when summary judgment motions are filed.

## CONCLUSION

For the reasons set forth above, PTC's motion for leave to amend its counterclaims for conversion, unjust enrichment, and violation of the CFRA is **GRANTED IN PART AND DENIED IN PART**. The hearing scheduled for this motion is **VACATED**.

PTC must file its amended answer, consistent with the rulings set forth herein, **BY NOON ON FRIDAY, APRIL 9, 2010**.

**IT IS SO ORDERED.**

Dated: April 5, 2010.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

11