United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOON RAWD TRADING INTERNATIONAL CO., LTD., <br><br> Plaintiff, <br><br> v. <br><br> PALEEWONG TRADING CO. INC., <br><br> Defendant. <br> ——————————————————/ <br> AND RELATED COUNTERCLAIMS <br> ——————————————————/ | No. C 09-05617 WHA <br><br> **ORDER GRANTING SUMMARY JUDGMENT** |

## INTRODUCTION

In this dispute concerning the importation of Singha Beer, plaintiff and counterdefendant Boon Rawd Trading International Co., Ltd. moves for summary judgment on the entire action. Defendant and counterclaimant Paleewong Trading Co., Inc. opposes the motion. For the reasons set forth below, BRTI's motion is **GRANTED**.

## STATEMENT

The rich history behind Singha Beer and the events leading up to this dispute were detailed in the prior order resolving BRTI's motion to dismiss. *See Boon Rawd Trading Int'l Co. v. Paleewong Trading Co.*, 688 F. Supp. 2d 940, 943–947 (N.D. Cal. 2010) (Dkt. No. 25). Only a broad summary of this background is recapitulated below.

Plaintiff and counterdefendant BRTI, a Thai corporation, exports Singha Beer to various countries around the world, including the United States. Defendant and counterclaimant PTC, a New York corporation, began importing and distributing Singha Beer in the United States in the 1970s; PTC eventually became the only importer and distributor of Singha Beer in certain parts of the United States, including California. During the lengthy course of the parties' dealings, however, *there never was any written contract* embodying an importation agreement between the parties. Nor was there ever an oral agreement. As PTC stated at the hearing, the parties conducted their business entirely on a "handshake" basis. PTC now argues, however, that the parties' course of conduct proves the existence of an *implied* contract, "the terms of which prevented BRTI from terminating Paleewong except for good cause and only after paying reasonable compensation" for its alleged exclusive importation rights (Opp. 1).

Speaking broadly, PTC alleges that it had been the exclusive importer and distributor of products manufactured by Boon Rawd Brewery (including Singha Beer) within a defined territory of 34 states over the past three decades. According to PTC, in around 2002, BRTI began engaging in a "tactical scheme" to strip PTC of its exclusive importation rights by unilaterally reducing PTC's defined territory, appointing a subsidiary as a "dual importer" to compete with PTC, practicing price discrimination against PTC, misappropriating PTC's confidential proprietary information, setting artificial sales goals, and falsely accusing PTC of various improprieties in its business operations (Dkt. No. 35, Am. Countercl. ¶¶ 2–3). This "tactical campaign" allegedly was intended to diminish the value of PTC's importation rights, to diminish PTC's profits, and either to create a pretextual basis for termination or to force PTC to relinquish its import rights for little or no payment (*id.* ¶ 16). The alleged motivation for this campaign was that BRTI wished to usurp for itself the profitable customer base and business goodwill that PTC had developed from scratch through three decades of importation and distribution work (*id.* ¶ 69).

During the early- to mid-2000s, BRTI attempted on multiple occasions to formally terminate PTC as its importer in California, allegedly without good cause or for insufficient compensation. During this time frame, BRTI also proposed that its subsidiary form an importation joint venture with PTC, but the negotiations fizzled. During the mid- to late-2000s,

2

the parties continued to negotiate periodically regarding termination of PTC's importation rights. Eventually, BRTI sent PTC a letter on August 20, 2009, advising PTC that its "rights to import [BRTI]'s products will be terminated effective December 31, 2009." The letter also stated that BRTI "remains open to discuss the termination compensation to PTC, in light of PTC and [BRTI]'s long relationship and the mutual respect the companies share" (Turitz Exh. M Exh. 38 at PTC000398). Out of the ashes of a failure to reach agreement regarding PTC's "termination compensation" has risen this litigation.

PTC no longer operates as an importer of BRTI's products, but it does continue to operate as a distributor of BRTI's products; this action concerns only PTC's loss of the import side of its business. At the final pretrial conference, the parties described the relevant change in PTC's business operations as follows. Formerly, PTC imported Singha beer from BRTI into the United States. In California and New York, PTC also acted as distributor of the beer, meaning that it sold the beer to retail outlets such as restaurants and liquor stores. In 32 other states and the District of Columbia, PTC sold the beer to other distributors, who in turn sold it to retail outlets. Fast forward. Currently, PTC does not import any products from BRTI into the United States. BRTI's subsidiary, Singha North America, now does all the importing from BRTI into the United States. In California and New York, SNA sells the beer to PTC, who still acts as distributor in those states. In other states, SNA sells the beer to other distributors. PTC represents that the import business (*i.e.*, selling to distributors) is more profitable than the distribution business (*i.e.*, selling to retail outlets).

BRTI filed this civil action in late November 2009. The complaint sought declaratory relief stating that BRTI has the right to terminate PTC as importer at will and without compensation, and that BRTI does not owe PTC any termination compensation. PTC responded on December 21, 2009, and asserted eight counterclaims in its answer (Dkt. No. 6). Following motion practice, PTC filed an amended answer that pleads six counterclaims: (1) breach of implied contract; (2) intentional interference with prospective economic advantage; (3) breach of implied covenant of good faith and fair dealing; (4) conversion; (5) unjust enrichment; and (6) violation of the California Franchise Relations Act (Dkt. No. 35). BRTI moves for summary

3

judgment on all six of PTC's counterclaims and on BRTI's own claim for declaratory relief. This order follows full briefing and a hearing on the motion.

## ANALYSIS

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, and "material" only if the fact may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). In this analysis, all reasonable inferences must be drawn in the light most favorable to the non-moving party. *Johnson v. Racnho Santiago Cmty. Coll. Dist.*, 623 F.3d 1011, 1018 (9th Cir. 2010). Unsupported conjecture or conclusory statements, however, cannot defeat summary judgment. *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1103 (9th Cir. 2008).

Where the party moving for summary judgment would bear the burden of proof at trial, that party bears the initial burden of producing evidence that would entitle it to a directed verdict if uncontroverted at trial. *See C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000). Where the party moving for summary judgment would not bear the burden of proof at trial, that party bears the initial burden of either producing evidence that negates an essential element of the non-moving party's claims, or showing that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. *See Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party does not satisfy its initial burden, then the non-moving party has no obligation to produce anything and summary judgment must be denied. If, however, the moving party satisfies its initial burden of production, then the non-moving party must produce admissible evidence to show there exists a genuine issue of material fact. *Id.* at 1102–03.

4

### 1.  ADMISSIBILITY OF EVIDENCE

Before reaching the merits of the instant summary judgment motion, a preliminary evidentiary question must be decided; it seems that one side's "course of conduct" evidencing an implied contract is the other's "attempt[] to compromise" inadmissible under Federal Rule of Evidence 408. Specifically, BRTI argues that its "offers and negotiations from 2000 to 2009 for various business alternatives by which BRTI amicably sought to terminate PTC's importation of Singha" were conducted "under the shadow of" PTC's litigation threats and therefore must be excluded (Br. 3, 11). PTC disagrees.

Federal Rule of Evidence 408(a) provides that evidence of an offer to settle a claim or of an agreed settlement of a claim is not admissible for certain purposes related to that claim:

> Evidence of the following is not admissible on behalf of any party, when offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount, or to impeach through a prior inconsistent statement or contradiction:
>
> (1) furnishing or offering or promising to furnish — or accepting or offering or promising to accept — a valuable consideration in compromising or attempting to compromising the claim; and
>
> (2) conduct or statements made in compromise negotiations regarding the claim, except when offered in [a limited criminal context].

The rule, however, does not provide any guidance as to what sort of dispute constitutes a "claim" for purposes of exclusion. The Ninth Circuit has found that FRE 408 can be triggered once a claim for relief is "asserted," and it has found that this might happen before the claim actually is *filed* with any adjudicative tribunal. *Mundy v. Household Fin. Corp.*, 885 F.2d 542, 546–47 (9th Cir. 1989).

The parties' importation business relationship died a slow death over the course of a decade. BRTI made multiple attempts to terminate PTC's status as its only importer of Singha beer in California, and PTC responded by *asserting* its supposed right to either continue on in its exclusive-importer role or be compensated for surrendering that right. Even though the flames of federal litigation were not ignited until December 2010, sparks of threatened litigation began to fly years earlier. BRTI has identified numerous letters from PTC's counsel confirming these

5

developments, such as the 2002 statement that PTC "will be forced to aggressively legally defend any diminution of its presently existing legal status" (Turitz Exh. J-2), the 2004 reference to avoiding "the costs of time consuming and highly publicized litigation" (Turitz Exh. M at Exh. 8 at PTC000023), and the 2007 statement that "litigation" is "an alternative that has literally been available to and contemplated by the parties for years" (Meckfessell Exh. E at PTC000280). Indeed, by 2007, PTC's counsel even characterized the parties' communications as "settlement discussions" (*id.* at PTC000281).

Because PTC asserted the alleged rights that are the subject of this action long before filing any of its counterclaims, the preclusive effect of FRE 408 attaches to the parties' attempts to avoid this litigation by negotiating an agreement regarding PTC's termination. PTC's argument that these communications were simply part of the normal course of the parties' business dealings is unconvincing.

PTC also argues that even if FRE 408 is triggered, these materials are still admissible, because they are offered "to establish the conduct of the parties" and not "to demonstrate liability," as forbidden by the rule (Opp. 12). In the present circumstances, this is a meaningless distinction. The "conduct of the parties" is relevant only as a basis for establishing liability (*e.g.*, for breach of an implied contract inferred from that conduct). This evidence goes directly to the ultimate issue, not an ancillary or tangential inquiry. PTC's fall-back argument for admissibility essentially states, "the evidence is offered only to prove the facts of the case." For that purpose it is inadmissible.

### 2. COUNTERCLAIM ONE: BREACH OF IMPLIED CONTRACT

PTC's first counterclaim alleges that an implied contract is evidenced by the parties' thirty-year relationship and course of conduct, and that BRTI breached that contract by terminating PTC as importer without good cause and without payment of compensation for the import rights. Under California law, which both parties apply to this counterclaim, "[a]n implied contract is one, the existence and terms of which are manifested by conduct." CAL. CIV. CODE § 1621. Conduct may imply the existence and terms of an agreement where a "meeting of the minds" or agreement has been reached, and the parties' conduct evidences their mutual intent

6

to promise compliance with the agreed terms. *Div. of Labor Law Enforcement v. Transpacific Transp. Co.*, 137 Cal. Rptr. 855, 69 Cal. App. 3d 268, 275 (Cal. Ct. App. 1977).

PTC has not identified any admissible evidence that would enable a reasonable trier of fact to conclude that the parties had reached an understanding that PTC could be terminated only for good cause or compensation. Most of the evidence PTC cites in attempting to show the existence of such an agreement is inadmissible pursuant to FRE 408, as previously discussed. Much of the testimony PTC cites in its opposition is mischaracterized, and scrutiny of the record reveals that it does not support the propositions for which it is cited. The fact that PTC was the only importer of Singha beer in certain territories for a long time does not imply that BRTI *agreed* that PTC had the right to continue in that role indefinitely or that it could only be terminated for money. The terms of BRTI's dealings with other importers do not show that BRTI reached a similar meeting of the minds with PTC. Only two citations in PTC's opposition brief do not fall within these categories; these two exceptions are inadequate as well.

*First*, PTC points to a statement in the 2008 declaration of Julpas Kruesopon, who served as CEO of BRTI during part of 2006. Kruesopon declares that he "was told by representatives of the Brewery . . . that pursuant to Paleewong's agreement with the Boon Rawd and BRTI Paleewong could only be terminated for good cause" [*sic*] (Somsiam Sara Paleewong Exh. B ¶ 5). This statement has no probative value at all. Because Kruesopon does not identify the supposed "representatives of the Brewery," his opinion that they were brewery representatives — and that BRTI can be bound by their alleged statement — is conclusory argument bereft of factual support.

Moreover, Kruesopon's declaration and testimony are plagued with Rule 26 problems. PTC has agreed not to introduce the 2008 Kruesopon declaration at trial (it would be hearsay at all events) (Dkt. No. 209 Opp. at 1). This order holds that Kruesopon will not be permitted to offer live testimony at trial, either. Rule 26(a)(i) of the Federal Rules of Civil Procedure required parties to disclose "the name and, if known, the address and telephone number" of each of its witnesses. If a party fails to disclose or supplement that information, then the party may not use the witness "to supply evidence on a motion, at a hearing, or at trial, unless the failure was

7

substantially justified or is harmless." FRCP 37(c)(1). PTC consistently failed to disclose Kruesopon's contact information (*e.g.*, Yu MIL Exh. M at 4). As the party offering the witness, it was PTC's responsibility under Rule 26(a) to obtain and disclose Kruesopon's address and telephone number. PTC maintains that it "did not and does not possess [Kruesopon]'s address" (Ettelman MIL Decl. ¶ 5), but PTC does not provide any explanation for this shortcoming. PTC's counsel was able to obtain a signed declaration from Kruesopon in 2008, so PTC should have at least provided the contact information it used at that time. PTC now represents that Kruesopon "will testify at trial" (Dkt. No. 193 at 11; Yu MIL Exh. Z at 2). Whatever dealings with Kruesopon enabled PTC to make that statement must have revealed at least some recent information regarding his whereabouts. PTC utterly failed to carry its Rule 37(c) burden of justifying its failure to disclose Kruesopon's contact information. PTC has not demonstrated that this failure was substantially justified nor that it was harmless; if Kruesopon is willing to testify at trial, then perhaps he would have voluntarily sat for deposition as well. Accordingly, the preclusive effect of Rule 37(c) attaches to bar Kruesopon from testifying at trial.

*Second*, PTC points to deposition testimony from Vapee Bhirom Bhakdi, who served as export manager of the Boon Rawd Brewery from 1987–1999. This individual testified that he "never had any thought of replacing Suchot [Paleewong] with someone else" (Wang Exh. C at 99:5–7). He also testified that, when he retired and ceded company control to his sons, he instructed them that PTC was "the first one who brought beer into the country so I want them to continue" (*id.* at 116:11–16). That Vapee Bhirom Bhakdi had a *preference* for continuing to import through PTC and expressed that preference within the BRTI organization, however, does not show that BRTI reached an *agreement* with PTC that PTC could be terminated only for cause or compensation.

There is nothing else. PTC has not proffered one scintilla of admissible evidence that would enable a reasonable jury to infer that the parties had reached the mutual understanding that PTC alleges. Accordingly, BRTI's motion for summary judgment on PTC's first counterclaim is **GRANTED**. This order does not reach the parties' arguments regarding the probative value of the evidence excluded under FRE 408.

8

### 3. COUNTERCLAIM THREE: BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

In every contract there is an implied covenant of good faith and fair dealing that neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the benefits of the agreement. *Locke v. Warner Bros., Inc.*, 66 Cal. Rptr. 2d 921, 57 Cal. App. 4th 354, 363 (Cal. Ct. App. 1997). Without a contract, however, there is no such implied covenant. Because PTC is unable to prove the existence of the implied contract alleged in its first counterclaim, the question of an implied covenant deriving from that contract is moot. BRTI's motion for summary judgment on PTC's third counterclaim is **GRANTED**. This order does not reach the parties' arguments regarding whether certain actions would constitute an actionable breach of an implied covenant.

### 4. COUNTERCLAIM SIX: VIOLATION OF THE CALIFORNIA FRANCHISE RELATIONS ACT

PTC's sixth counterclaim requires proof that PTC was a "franchisee" under the California Franchise Relations Act. A business qualifies as a franchisee under this statute only when it is operating pursuant to a franchise "contract or agreement." CAL. BUS. & PROF. CODE § 20001. Because PTC cannot prove that it had an implied contract or agreement with BRTI, there are no contract terms to analyze in light of the statutory requirements. Stated differently, PTC and BRTI did not have *any* contract, so they certainly did not have a franchise contract. Moreover, the CFRA defines "franchise" to include only engagements "in the business of offering, selling or distributing goods or services." *Ibid.* Importation — the business at issue in this action — does not fall within this definition. The CFRA does not apply. BRTI's motion for summary judgment on PTC's sixth counterclaim is **GRANTED**. This order does not reach the parties' arguments regarding the statutory elements of a franchise agreement.

### 5. COUNTERCLAIM FOUR: CONVERSION

PTC's conversion counterclaim is based on BRTI's alleged misappropriation of PTC's "tangible detailed sales information, account level, name, volume, pricing and delivery information," or other "confidential and proprietary business information" capable of storage either electronically or on paper; this counterclaim does *not* extend to business goodwill,

9

1 importation rights, or other such intangibles (Dkt. No. 34 at 6; Dkt. No. 35, Am.

2 Countercl. ¶¶ 70, 73). In order to prove its conversion counterclaim under California law, PTC

3 must show (1) ownership or right to possession of the subject property, (2) wrongful

4 interference with possession, (3) damage, and (4) the absence of consent to BRTI's exercise of

5 dominion over the subject property. *Bank of New York v. Fremont Gen. Corp.*, 523 F.3d 902, 914

6 (9th Cir. 2008).

7 BRTI argues that PTC cannot prove that it did not consent to BRTI's exercise of dominion

8 over its tangible business information. BRTI points to deposition testimony from Somsiam Sara

9 Paleewong (PTC's Rule 30(b)(6) witness) indicating that PTC "gave" BRTI its customer and

10 pricing information without obtaining a confidentiality agreement, and did not demand that BRTI

11 return the information after discovering its alleged misuse (Turitz Exh. C at 135–37, 143). This

12 showing is enough to shift the burden of production to PTC.

13 In response, PTC points to specific statements within the same passages of deposition

14 testimony. These excerpts are not sufficient to carry PTC's burden. *First*, Somsiam Sara

15 Paleewong testified that PTC considered the information confidential, but this subjective

16 characterization does not illuminate whether PTC granted or denied consent to specific uses when

17 it *gave* the information to BRTI (Somsiam Sara Paleewong Exh. D at 136:14–16). *Second*,

18 Somsiam Sara Paleewong testified that it was PTC's "understanding . . . that the accounts are

19 protected accounts" and "that information given to a supplier would be confidential" (*id.*

20 at 136:8–9, 20–22). Again, however, Somsiam Sara Paleewong provided no factual basis for

21 these subjective viewpoints, and PTC's unilateral "understanding" does not bind BRTI to

22 limitations on its use of the information PTC supplied. *Third*, Somsiam Sara Paleewong stated

23 that when PTC provided the information to BRTI, PTC "asked them to not use it and to not

24 infringe in our customers which is what this list was" and that in response BRTI "said they were

25 going to protect our account base" (*id.* at 143:23–35, 144:11–14). This testimony is too vague to

26 support an inference by PTC that BRTI recognized PTC's characterization of the information as

27 confidential and agreed not to use the tangible items containing the information in ways contrary

28 to such a designation.

10

PTC admittedly *gave* BRTI the tangible information under these circumstances, and PTC has not identified any other evidence showing that PTC did not consent to BRTI's exercise of dominion over it. On the present record, no reasonable juror could find that PTC withheld consent when it handed over its customer and pricing information. Accordingly, BRTI's motion for summary judgment on PTC's fourth counterclaim is **GRANTED**. This order does not reach BRTI's argument that the conversion counterclaim is time-barred.

### 6. COUNTERCLAIM TWO: INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

PTC's second counterclaim alleges that BRTI "disrupted Paleewong's relationships with its customers by engaging in a systematic scheme to usurp Paleewong's U.S. import rights to the Boon Rawd Products," including through competing importation and price discrimination (Dkt. No. 35, Am. Countercl. ¶ 61). The tort of intentional interference with prospective economic advantage requires a predicate act of interference that is wrongful by some independent legal measure other than the fact of interference itself. *Reeves v. Hanlon*, 95 P.3d 513, 519–520 (Cal. 2004). In other words, this tort depends on an underlying violation of law. Because all of PTC's other claims for relief fail, there is no predicate wrongful act on which an intentional interference tort claim could be based, and this claim fails as well. BRTI's motion for summary judgment on PTC's second counterclaim is **GRANTED**. This order does not reach BRTI's argument that this counterclaim is time-barred.

### 7. COUNTERCLAIM FIVE: UNJUST ENRICHMENT

PTC's fifth counterclaim alleges that "Paleewong has conferred a benefit upon BRTI in the form of enhanced product recognition and goodwill through its marketing and importation efforts in Paleewong's defined territory of 32 states and that BRTI has unjustly retained this benefit by terminating Paleewong without paying Paleewong reasonable compensation for the product recognition and goodwill that Paleewong developed and cultivated throughout the United States" (Dkt. No. 35, Am. Countercl. ¶ 77). As explained in prior orders, unjust enrichment is "not a cause of action . . . or even a remedy, but rather a principle, underlying various legal doctrines and remedies. It is synonymous with restitution." *McBride v. Boughton*, 20 Cal. Rptr. 3d 115, 121 (Cal. Ct. App. 2004) (internal citations and quotations omitted). Thus, unjust

11

enrichment is not a standalone claim under California law; it is a fall-back theory that would come into play only in the event of a finding of liability on some other non-contractual counterclaim (Dkt. No. 34 at 6–7). Because PTC is unable to prove any of its other counterclaims, the principle of unjust enrichment does not apply. BRTI's motion for summary judgment on PTC's fifth counterclaim is **GRANTED**.

### 8. DECLARATORY JUDGMENT CLAIM

"In a case of actual controversy within its jurisdiction," a United States court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. 2201. The asserted claim and counterclaims in the instant action indicate an actual controversy between the parties regarding the conditions under which BRTI may terminate PTC as an importer of BRTI's products. For the reasons stated above, BRTI is entitled to summary judgment on all of PTC's counterclaims relating to BRTI's termination of PTC as an importer of BRTI's products. Accordingly, BRTI is also entitled to summary judgment on its own claim for declaratory judgment that it has the right to terminate PTC as an importer of BRTI's products into the United States at will and without compensation, and that PTC is not entitled to compensation for its termination as an importer of BRTI's products. BRTI's motion for summary judgment on its claim for declaratory relief is **GRANTED**.

### CONCLUSION

Good cause has been shown to exclude BRTI's "offers and negotiations from 2000 to 2009 for various business alternatives by which BRTI amicably sought to terminate PTC's importation of Singha" pursuant to FRE 408. BRTI's other evidentiary objections to the documents cited herein are overruled. BRTI's motion for summary judgment disposing of all claims and counterclaims in the action is **GRANTED**. This order disposes of the entire action. Judgment will be entered accordingly. The March 14 jury trial and all other pending dates are **VACATED**.

**IT IS SO ORDERED.**

Dated: March 8, 2011.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

12