IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOON RAWD TRADING INTERNATIONAL CO., LTD., <br><br> Plaintiff, <br><br> v. <br><br> PALEEWONG TRADING CO. INC., <br><br> Defendant. <br> ———————————————/ <br> AND RELATED COUNTERCLAIMS <br> ———————————————/ | No. C 09-05617 WHA <br><br> **ORDER DENYING MOTION TO SET ASIDE JUDGMENT AND VACATING HEARING** |

## INTRODUCTION

In this dispute concerning the importation of Singha beer, plaintiff and counterdefendant Boon Rawd Trading International Co., Ltd. was granted summary judgment on the entire action. Defendant and counterclaimant Paleewong Trading Co. Inc. now moves pursuant to FRCP 59(e) to set aside judgment and vacate the order granting summary judgment. BRTI opposes. This order finds that PTC's motion is a thinly-disguised attempt to re-litigate old matters. Accordingly, the motion is **DENIED** and the hearing thereon is **VACATED**.

## STATEMENT

The facts and arguments at play in this action have been detailed in previous orders and need not be repeated at length here (*See* Dkt. Nos. 25, 243). What follows is a synopsis of only the essentials of the action.

BRTI makes Singha beer in Thailand.  Until recently, PTC imported Singha into the United States.  PTC also distributed — and continues to distribute — Singha in the United States, but this action concerned only the importation side of PTC's business.  The business relationship between the parties began in the 1970s, and it died a slow, convoluted death over the last decade or so.  BRTI filed this action in November 2009.  The complaint sought declaratory relief stating that BRTI had the right to terminate PTC as importer at will and without compensation, and that BRTI did not owe PTC any termination compensation.  PTC answered the next month, and asserted eight counterclaims in its answer (Dkt. No. 6).  Following motion practice, PTC filed an amended answer that pled six counterclaims:  (1) breach of implied contract; (2) intentional interference with prospective economic advantage; (3) breach of implied covenant of good faith and fair dealing; (4) conversion; (5) unjust enrichment; and (6) violation of the California Franchise Relations Act (Dkt. No. 35).

After discovery was complete, BRTI moved for summary judgment on all six of PTC's counterclaims and on BRTI's own claim for declaratory relief.  The motion was granted and judgment was entered in March 2011 (Dkt. Nos. 243, 244).  The order granting summary judgment followed full briefing and a hearing on the motion, as well as continued discussion at the pretrial conference.  Several weeks later, PTC timely filed the instant motion to set aside judgment and vacate the order granting summary judgment pursuant to FRCP 59(e).

**ANALYSIS**

FRCP 59(e) authorizes a motion to alter or amend judgment after its entry.  The rule also permits a motion to vacate a judgment rather than merely amend it.  *See Foman v. Davis*, 371 U.S. 178, 181 (1962).  Rule 59(e), however, is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources."  *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000).  Amendment or alteration of a judgment is appropriate under Rule 59(e) if any of the following conditions is met:  (1) the district court is presented with newly-discovered evidence; (2) there is an intervening change in controlling law; or (3) the district court committed clear error or made a decision that was manifestly unjust.

*Zimmerman v. City of Oakland*, 255 F.3d 734, 740 (9th Cir. 2001). The requirement of such a showing is a "high hurdle." *Weeks v. Bayer*, 246 F.3d 1231, 1236 (9th Cir. 2001).

A Rule 59(e) motion may not simply restate arguments that already were raised in opposition to summary judgment. *Backlund v. Barnhart*, 778 F.2d 1386, 1388 (9th Cir. 1985). Furthermore, a Rule 59(e) motion "may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003). Rather, the motion must clear the high hurdle of showing that alteration or amendment of the judgment is appropriate for one of the reasons stated above. Judgment is not properly reopened "absent highly unusual circumstances." *Weeks*, 246 at 1236. PTC has identified no such unusual circumstances.

PTC's Rule 59(e) motion is an attempt to re-litigate the summary judgment motion. PTC presents no newly-discovered evidence. PTC identifies no intervening change in the law. Instead, PTC asserts that the order granting summary judgment was manifestly unjust or contained clear errors (Br. 2). All of PTC's arguments, however, were raised or could have been raised before judgment was entered. Accordingly, they do not form a proper basis for a Rule 59(e) motion, and the motion must be denied.

**1.  BREACH-OF-IMPLIED-CONTRACT COUNTERCLAIM.**

Regarding its breach-of-implied-contract counterclaim, PTC argues that the summary-judgment evidence proffered by both parties should have been treated differently. PTC, however, fails to show that clear error was committed or that manifest injustice resulted from the way the summary-judgment evidence was treated.

**A.  BRTI'S Summary Judgment Evidence.**

The first issue raised in PTC's brief is that "BRTI carefully did not deny through witness affidavits or its own documentary evidence that there existed a contract between BRTI and Paleewong" in the summary judgment record (Br. 3). PTC characterizes this observation as an "elephant in the room" that "could allow a reasonable jury to infer that there was an implied in fact contract" (*id.* at 1, 6). PTC could have raised this argument in opposition to BRTI's

3

1  summary judgment motion but chose not to do so. It is now too late for PTC to Monday-morning
2  quarterback its summary-judgment loss. This is dispositive.

3  Moreover, if PTC had raised this argument in a timely manner, it would have been
4  rejected. PTC concedes that it would have the "burden at trial to prove breach of implied in fact
5  contract," including the element "that the parties had a fundamental or tacit understanding"
6  (*id.* at 4–5). The summary-judgment order explained: "Where the party moving for summary
7  judgment would not bear the burden of proof at trial, that party bears the initial burden of either
8  producing evidence that negates an essential element of the non-moving party's claims, *or*
9  *showing that the non-moving party does not have enough evidence of an essential element to*
10 *carry its ultimate burden of persuasion at trial*" (Dkt. No. 243 at 4) (emphasis added). PTC
11 ignores the second part of this statement of the law in emphasizing that "BRTI produced no
12 evidence to 'negate an essential element of the non-moving party's claims'" (Br. 3–4).

13 Because PTC bore the ultimate burden of proof with respect to the existence of an
14 implied-in-fact contract, BRTI did not have to produce *any* countervailing evidence to prevail on
15 its motion for summary judgment. All BRTI needed to do was demonstrate that PTC did not have
16 enough admissible evidence to prove the existence of an implied-in-fact contract. BRTI did so.
17 The summary-judgment order found that "PTC ha[d] not proffered one scintilla of admissible
18 evidence that would enable a reasonable jury to infer that the parties had reached the mutual
19 understanding that PTC allege[d]" (Dkt. No. 243 at 8). The question of whether BRTI had
20 proffered any evidence on the other side of the balance was irrelevant.

21 **B.    PTC's Summary-Judgment Evidence.**

22 Regarding its own summary-judgment evidence, PTC argues that certain inadmissible
23 documents and testimony were persuasive and should not have been excluded pursuant to
24 FRE 408. The admissibility and persuasive value of these items of evidence were briefed and
25 argued extensively. PTC does not raise any new arguments that it did not or could not have
26 raised before.

27 PTC argues that if certain documents and testimony had been ruled admissible, they
28 would have supported "an inference by a reasonable jury that BRTI acknowledged that any

4

transition/termination/change in [PTC]'s importer territory required the payment of reasonable compensation" (Br. 7). This argument is beside the point. Because the evidence was ruled inadmissible, the question of its probative value is irrelevant.

PTC also challenges the exclusion of certain items of evidence pursuant to FRE 408 (*id.* at 7–9). PTC, however, merely rehashes the same admissibility arguments that were made and rejected two months ago. PTC focuses its challenge on specific documents that were "not mentioned" in the summary-judgment order (*id.* at 7). True, the Rule 408 ruling excluded a category of evidence without setting forth a detailed analysis of each document or transcript within that category (Dkt. No. 243 at 5–6). This fact alone, however, does not show that specific items of evidence were overlooked or misconstrued. PTC has not cleared the high hurdle of showing that the Rule 408 decision was clearly erroneous or manifestly unjust.

### 2. CALIFORNIA FRANCHISE RELATIONS ACT COUNTERCLAIM.

Regarding PTC's counterclaim under the California Franchise Relations Act, summary judgment was granted for two reasons, each of which was independently sufficient (Dkt. No. 243 at 9). PTC now challenges both of them as clearly erroneous or manifestly unjust.

*First*, PTC raises the issue of "whether the CFRA applies to the *importing* of beer, as distinguished from distribution" (Br. 11). This question was relevant because the action was about importation only, not distribution. PTC notes that this issue was discussed at the March 3 hearing on the summary-judgment motion, and PTC quotes the detailed argument that it set forth at the hearing, including an analysis of relevant decisions (*ibid.*). PTC had its chance to argue this issue. It did so, and it lost. The summary-judgment order found that importation did not fall within the CFRA's definition of "franchise" activities (Dkt. No. 243 at 9). PTC now belatedly offers judicial and statutory evidence that it interprets as supporting the opposite view, but none of this evidence shows that the holding in the summary-judgment order was clearly erroneous or manifestly unjust. Even if PTC is correct that the words "offer" and "sell" in the CFRA were intended to be construed broadly, it does not automatically follow that they should be construed to encompass importation.

5

*Second*, PTC points out that the CFRA requires "a contract or agreement." Thus, PTC argues, an agreement is different from a contract, and there could have been a qualifying "agreement" between the parties even if they had no implied-in-fact contract. PTC further asserts "it is undisputed" that the parties had "an importation agreement" (Br. 10). Because importation is not covered by the CFRA, "an importation agreement" would not save the CFRA claim even if one were found to exist. Moreover, the summary-judgment order found that "PTC cannot prove that it had an implied contract *or agreement* with BRTI" (Dkt. No. 243 at 9) (emphasis added). PTC presents no evidence that this finding was clearly erroneous or manifestly unjust.

### 3. UNJUST-ENRICHMENT COUNTERCLAIM.

Regarding its counterclaim for unjust enrichment, PTC repeatedly has been told that unjust enrichment is not a standalone cause of action, or even a remedy, but rather a principle that underlies various doctrines and remedies (Dkt. Nos. 25 at 19–20, 34 at 6, 243 at 11). PTC, however, refuses to take "not a claim" for an answer. PTC now argues that the summary-judgment ruling on unjust enrichment was inconsistent with a prior order and with the established law (Br. 12–14).

As to the prior order, PTC was allowed to *plead* unjust enrichment as a fallback theory that might provide equitable recovery even if its implied-contract counterclaim failed (Dkt. No. 34 at 6–9). The summary-judgment order found that no unjust-enrichment recovery ultimately would come into play because no other claims survived, *i.e.*, PTC could not prove that any enrichment it conferred on BRTI was unjustly retained (Dkt. No. 243 at 11–12). This finding was *not* inconsistent with the prior order allowing PTC to plead unjust enrichment.

As to the legal framework, PTC cites a treatise and decisions that are several years old. If PTC disagreed with the analysis that unjust enrichment is not a standalone claim, it could have marshaled these resources long ago. PTC is now making an untimely attempt to dispute the statement of unjust-enrichment law that applied throughout this action. PTC's arguments do not show that the decision to grant summary-judgment on the unjust-enrichment counterclaim was clearly erroneous or manifestly unfair.

6

### 4. JURY INSTRUCTIONS.

The last portion of PTC's brief sets forth proposed jury instructions (Br. 14–16). PTC urges the Court to set aside judgment, vacate the order granting summary judgment, and proceed full-steam-ahead to a jury trial in which PTC's proposed jury instructions might be used. Because PTC has failed to clear the high hurdle of showing that judgment should be set aside pursuant to FRCP 59(e), PTC's proposed jury instructions are moot.

### CONCLUSION

For the foregoing reasons, PTC's Rule 59(e) motion to set aside judgment and vacate the order granting summary judgment is **DENIED**. The hearing on the motion previously set for May 5, 2011, is **VACATED**. This case is now ready for review by the court of appeals.

**IT IS SO ORDERED.**

Dated: April 29, 2011.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE